**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BITBLOX LLC,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL TRANSPORT, LLC, et al.,<br><br>Defendants. | CIVIL ACTION NO. 3:25-CV-1196<br><br>(SAPORITO, J.) |

**MEMORANDUM**

On July 1, 2025, Bitblox filed this action against shipper Central Transport, LLC ("Central Transport") and broker J.B. Hunt Transport, Inc. ("J.B. Hunt"), asserting claims, for damages to bitcoin mining machines sustained during its shipment from South Carolina to Pennsylvania. Bitblox asserts claims under the Carmack Amendment to the Interstate Commerce Act of 1909, 49 U.S.C. § 14706, which provides a cause of action for shippers against carriers for the loss or damage of shippers' goods during transportation. *Bunis v. Masha Mobile Moving & Storage, LCC*, 674 F. Supp. 3d 186, 192 (E.D. Pa. 2023). On September 9, 2025, J.B. Hunt asserted a cross claim against Central Transport. (Doc. 8). Now before the court is Central Transport's motion to transfer, and in

the alternative, motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 9). The motion has been briefed (Doc. 11; Doc. 12; Doc. 13) and the matter is ripe for review.[1]

## I. Background[2]

Bitblox arranged to ship bitcoin mining equipment from South Carolina to its offices in Mountain Top, Pennsylvania. To facilitate the shipment, Bitblox retained J.B. Hunt as a freight broker, which in turn arranged for Central Transport to transport the equipment. On September 25, 2024, the equipment was packaged and loaded for transport. Bitblox alleges that, at the time of loading, the equipment was in good condition and in proper working order.

The shipment was delivered on October 1, 2024, at the Blue Ridge Travel Plaza in Mountain Top, Pennsylvania. Upon delivery, Bitblox's facilities and safety officer, Ed Kopeck, immediately observed that the machines had sustained damage. He promptly notified the truck driver, noting that the pallets appeared broken and unsecured. Mr. Kopeck

---

[1] We note that Central Transport's motion to dismiss concerns a counterclaim asserted by J.B. Hunt against Central Transport. J.B. Hunt, however, has failed to respond to Central Transport's motion.

[2] The facts are taken from the plaintiff's complaint. (Doc. 1).

attributed the damage to Central Transport's loading and transportation methods, alleging that Central Transport failed to properly secure and protect the machines and pallets during transit.

On November 5, 2024, Bitblox, through its insurance broker, submitted a claim for damage to Central Transport. On November 12, 2024, Central Transport denied Bitblox's claim. In early 2025, Bitblox filed a claim for the damaged machines against J.B. Hunt. On March 4, 2025, J.B. Hunt denied that claim. Accordingly, on July 1, 2025, Bitblox filed this action against Central Transport and J.B. Hunt asserting claims under the Carmack Amendment.

## II. Discussion

### A. Motion to Transfer

Here, Central Transport moves to transfer this action to the United States District Court for the Eastern District of Michigan pursuant to an agreement with Bitblox that it claims contained a mandatory forum-selection clause warranting transfer of this action. (Doc. 9).

"Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district where the case might have been brought, or to which the parties have consented, for the convenience of the parties and

witnesses and in the interest of justice." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2019). In deciding a § 1404(a) motion to transfer, "the Court may properly consider only those facts which are undisputed or are a matter of record in the form of affidavits, depositions, stipulations, or other documents. Mere allegations cannot be taken as proof of the facts alleged in support of the motion." *Kisko v. Penn Cent. Transp. Co.*, 408 F. Supp. 989, 986 (M.D. Pa. 1976) (citation omitted); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 & n.2 (3d Cir. 1973); *Bombin v. Sw. Airlines Co.*, 529 F. Supp. 3d 411, 417 (E.D. Pa. 2021). Generally, "[t]he § 1404(a) movant bears the burden of persuasion." *McGraw-Hill*, 909 F.3d at 57; *see also Plum Tree*, 488 F.2d at 757; *Kisko*, 408 F. Supp. at 986.

"A motion to transfer venue is appropriate where, as here, a party invokes a forum-selection clause." *Bombin*, 529 F. Supp. 3d at 416. "Ordinarily, in a case not involving a forum selection clause, a court evaluates a § 1404(a) motion using such factors as the convenience of the parties and the relevant public interests." *Mathias v. Caterpillar, Inc.*, 203 F. Supp. 3d 570, 574 (E.D. Pa. 2016); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62, 63 n.6 (2013) (listing

private and public interest factors.). "In *Atlantic Marine*, however, the Supreme Court explained that the presence of a forum-selection clause alters the traditional analysis in several respects." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 96 (3d Cir. 2018).

> In the face of a valid selection clause, a district court modifies its analysis in three ways. First, no weight is given to the plaintiff's choice of forum. Second, the court does not consider arguments about the parties' private interest. Instead, "a district court may consider arguments about public-interest factors only." Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

*McGraw-Hill*, 909 F.3d at 57 (quoting *Atl. Marine*, 571 U.S. at 63–64) (citations omitted). Under the *Atlantic Marine* framework, "courts conduct a two-part analysis when deciding whether to enforce a forum-selection clause." *Mathias*, 203 F. Supp. 3d at 575 & n.3; *see also Silvis v. Ambit Energy, L.P.*, 90 F. Supp. 3d 393, 397 & n.3 (E.D. Pa. 2015). "First, a district court must determine whether the forum-selection clause is valid and enforceable." *Bombin*, 529 F. Supp. 3d at 416; *Mathias*, 203 F. Supp. 3d at 575; *Silvis*, 90 F. Supp. 3d at 397. "Second, a court must consider whether, pursuant to § 1404(a), 'extraordinary circumstances'

militate against enforcing the forum-selection clause." *Bombin*, 529 F. Supp. 3d at 416–17; *Mathias*, 203 F. Supp. 3d at 575; *Silvis*, 90 F. Supp. 3d at 397.

As we noted above, however, Bitblox has brought this action pursuant to the Carmack Amendment. "For over one hundred years, the Supreme Court has consistently held that the Carmack Amendment has completely occupied the field of interstate shipping." *Certain Underwriters at Int. at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 335 (3d Cir. 2014). "The Court has consistently described the Amendment's preemptive force as exceedingly broad–broad enough to embrace 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" *Id.* (quoting *Ga., Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)). Moreover, the Third Circuit, along with all other Circuits, have held that the Carmack Amendment is "the exclusive cause of action for interstate-shipping contract [and tort] claims alleging loss or damage to property." *Id.* at 336 (citations omitted).

Pertinent to this action, the Carmack Amendment contains "special venue" provisions that apply to claims against carriers and displace the

general federal venue provision. *See* 49 U.S.C. § 11706(d)(1). Put differently, the "Carmack [Amendment]… limits the parties' ability to choose the venue of their suit." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 98 (2010). Indeed, 49 U.S.C. § 14706(d)(2)(A) provides that a civil action against a "delivering carrier … may be brought against a delivering carrier in a district court of the United States or in a State court … in a state through which the defendant carrier operates." *Michigan Custom Machines, Inc. v. AIT Worldwide Logistics, Inc.*, 531 F. Supp. 3d 1208, 12 (E.D. Mich. 2021) (citing 49 U.S.C. § 14706(d)(1)). Moreover, a civil action under this section may be brought against the carrier alleged to have caused the loss or damage "in the judicial district in which such loss or damage is alleged to have occurred." *Id.* (quoting 49 U.S.C. § 14706(d)(2)). While a shipper and carrier "can enter into an agreement waiving [these] rights under the statute," *Exel, Inc. v. S. Refrigerated Transp., Inc.*, 807 F.3d 140, 149 (6th Cir. 2015), the parties must "*in writing, expressly waive* any or all rights and remedies under this part for the transportation covered by the contract…." 49 U.S.C. § 14101(b) (emphasis added). To do so, parties must "expressly reference the Amendment in some way, by name,

citation, or some other means." *Michigan Custom Machines, Inc.*, 531 F. Supp. 3d at 1215.

Here, the language of the forum-selection clause is as follows:

> **Jurisdiction**: Exclusive jurisdiction for all civil actions arising out of transportation services provided by Central Transport LLC including but not limited to actions arising from alleged damage to cargo and collection actions shall be either the state or federal courts in the State of Michigan. If any party files a legal action in contravention of the foregoing sentence, Central Transport shall be entitled to collect its reasonable attorney fees and costs associated with enforcing the foregoing sentence regardless of the ultimate outcome of the legal action. Shipper, consignee, third-party, ultimate debtor or any agent of any of these parties, by tendering freight to carrier or by being a party to the same shipment transaction in any way whatsoever, hereby consents to the personal jurisdiction of the state and federal courts of the State of Michigan. Laws of the State of Michigan shall apply to all contract or service disputes relating to indemnity by Carrier.

(Doc. 9-4, at 11). Noticeably absent from that language, however, is language that "expressly reference[s] the Amendment in some way, by name, citation, or some other means." *Michigan Custom Machines, Inc.*, 531 F. Supp. 3d at 1215. Moreover, to the extent that Central Transport may argue that the express selection of a specific venue may constitute an implicit waiver of the Carmack Amendment, "federal courts have

'refused to imply waivers of the Carmack Amendment from contract provisions that were not express waivers.'" *Id.* (quoting *Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76, 79–80 (S.D.N.Y. 2019)); *see Midamerican Energy Co. v. Start Enters., Inc.*, 437 F. Supp. 2d 969, 973 (S.D. Iowa 2006) (finding that a choice of law provision in favor of Iowa was not "sufficiently explicit to express an intent to avoid the rights and remedies of the Carmack Amendment."); *Phillips 66 Co. v. Smith Tank & Equip. Co.*, No. 4:17-CV-0388, 2018 WL 4334007, at *3 (S.D. Tex. July 32, 2008) (holding that a generic forum selection clause that "makes no reference to the Carmack's claims or remedies" is merely "an implicit waiver of Carmack rights and remedies, which is insufficient under 49 U.S.C. 14101(b)(1)."); *McKesson Corp. v. Longistics Transportation, Inc.*, No. 5:09-CV-250, 2010 WL 11564989, at *6 (E.D.N.C. Nov. 4, 2010) (finding no express waiver of the Carmack Agreement because "for a waiver to be effective, the agreement between the shipper and the carrier must communicate clearly and unmistakably or directly state the rights or remedies in question are waived") (quoting *Celadon Trucking Servs., Inc. v. Titan Textile Co.*, 130 S.W.2d 301, 305 (Tex. Ct. App. 2004)). Accordingly, we find that the forum selection clause at issue in this case

does not waive any provision of the Carmack Amendment because it is a generic clause that makes no reference to the statute. Therefore, Bitblox's action is appropriately brought in this court and venue is proper here.

**B. Motion to Dismiss, Bitblox**

In the alternative, Central Transport moves to dismiss Bitblox's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S 308, 322

(2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

Central Transport moves to dismiss Bitblox's Carmack Amendment claim against it on the basis that Bitblox's allegations consist solely of conclusory statements. (Doc. 11, at 11). To impose liability under the Carmack Amendment, shippers must prove "(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of the damages." *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003) (quoting *Beta Spawn, Inc. v. FFE Transp. Servs., Inc.*, 250 F.3d 218, 223

(3d Cir. 2001)). Upon review of Bitblox's complaint, we find that Bitblox has pleaded sufficient allegations warranting denial of Central Transport's motion to dismiss.

Bitblox's complaint does not consist of conclusory statements, but rather allegations supported by attached photographic and circumstantial evidence regarding the conditions of the bitcoin mining machines at their origin and upon their delivery. Bitblox alleges that the machines were in "good order and not damaged" upon delivery to Central Transport and that Central Transport did not "note any damage to the machines." (Doc. 1, ¶¶ 11, 12). Moreover, Bitblox has substantiated its claim by attaching photographs of the undamaged bitcoin mining machines prior to loading by Central Transport. *See* (Doc. 1-2, at 2–5). Bitblox also alleges that its facilities and safety officer observed damage to the machines as Central Transport unloaded them upon arrival, including unsecured packaging and broken or unsecured pallets. (*Id.*, ¶ 18, 19). That employee immediately notified the Central transport delivery driver of the damage, totaling approximately $717,372.00.[3] (*Id.*, ¶¶ 19, 57). Therefore, accepting all well-pleaded allegations in the

[3] Central Transport has not disputed the amount of damages.

complaint as true and viewing them in the light most favorable to the plaintiff, we find that Bitblox has pleaded sufficient allegations to support its Carmack Amendment claim against Central Transport. Accordingly, Central Transport's motion to dismiss as to this claim will be denied.

**C. Motion to Dismiss, J.B. Hunt**

Central Transport moves to dismiss the crossclaim that J.B. Hunt asserted against it in J.B. Hunt's answer to Bitblox's complaint. *See* (Doc. 8). To do so, Central Transport's argument is two-fold.

First, Central Transport moves to dismiss the plaintiff's Carmack Amendment claim against J.B. Hunt on the basis that the Carmack Amendment imposes liability only on "carriers" and "freight forwarders," not brokers. (Doc. 11, at 13). J.B. Hunt agrees with this contention. *See* (Doc. 15 at 2 n.1) ("[J.B. Hunt] agrees with Central Transport that Count II of plaintiff's complaint against J.B. Hunt cannot succeed because [J.B. Hunt] served as a broker in this transaction and Carmack liability only applies to 'carriers' and 'freight forwarders', not brokers.") (Doc. 15 at 2 n.1). Indeed, as the defendants have noted, while "a carrier is liable [under the Carmack Amendment] for damages incurred during a

shipment of goods, … a broker–someone who merely arranges for transportation–is not liable." *Tryg Ins. V. C.H. Robinson Worldwise, Inc.*, 767 F. App'x 284, 285 (3d Cir. 2019) (citing 49 U.S.C. § 14706(d)); *AMG Res. Corp. v. Wooster Motor Ways, Inc.*, 796 F. App'x 96, 99 (3d Cir. 2020) (explaining that liability under the Carmack Amendment does not extend to brokers). Accordingly, because there is no dispute that J.B. Hunt acted as broker in this action, we find the plaintiff cannot sustain his Carmack Amendment claim against J.B. Hunt, and therefore, that claim will be dismissed.

In light of that finding, Central Transport also moves to dismiss J.B. Hunt's duty to defend and indemnify counterclaim against it, arguing that the dismissal of the underlying Carmack Amendment claim against J.B. Hunt requires the dismissal of the crossclaim asserted by J.B. Hunt against it. However, the Third Circuit has held that "a dismissal of the original Complaint as to one of the defendants named therein does not operate as a dismissal of a cross-claim filed against such defendant by a co-defendant." *Aetna Ins. Co. v. Newton*, 398 F.2d 729, 734 (3d Cir. 1968); *Fairview Park Excavating Co. v. Al Monzo Const. Co.*, 560 F.2d 1122, 1125 (3d Cir. 1977). Therefore, the fact that the plaintiff's

Carmack Amendment claim against J.B. Hunt warrants dismissal does not, standing alone, warrant dismissal of J.B. Hunt's crossclaim against Central Transport.

That said, "[t]he duty to defend only arises if there is a claim against which to defend." *United States v. Sunoco, Inc.*, 637 F. Supp. 2d 282, 288 (E.D. Pa. 2009) (citing *McClure v. Deerland Corp.*, 585 A.2d 19, 22 (Pa. Super. 1991)). Here, in light of our ruling on Central Transport's motion to dismiss, the plaintiff has no remaining claim against J.B. Hunt. Accordingly, there is no longer a claim in which Central Transport must defend, and we therefore find that the plaintiff's asserted counterclaim is moot. But we do not reach that same conclusion concerning J.B. Hunt's crossclaim asserting a duty to indemnify. "[T]he duty to indemnify only arises if the indemnitor has paid damages to a third party." *Id.* (citing *McClure*, 585 A.2d at 22)). Here, despite the dismissal of the plaintiff's Carmack Amendment claim against J.B. Hunt, Central Transport may still be obligated to indemnify J.B. Hunt until the payment of damages pursuant to the terms of their agreement. Accordingly, Central Transport's motion to dismiss concerning its duty to indemnify under the terms of its contract with J.B. Hunt will be denied.

## III. Conclusion

For the foregoing reasons, Central Transport's motion to transfer will be denied, and in the alternative, its motion to dismiss is granted in part and denied in part. Central Transport's motion will be granted as to J.B. Hunt's asserted crossclaim against Central Transport for a duty to defend, while its motion will be denied as to J.B. Hunt's asserted crossclaim against Central Transport for a duty to indemnify, and denied as to Bitblox's Carmack Amendment claim against Central Transport.

An appropriate order follows.

Dated: September 21, 2026

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge